IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) Criminal No.   1:24-cr-00101-AMN |
| | ) |
| v. | ) |
| | ) |
| | ) **GOVERNMENT'S SENTENCING** |
| **ANTHONY LUIZZI,** | ) **MEMORANDUM** |
| | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby requests that the Court sentence the defendant Anthony Luizzi according to the Sentencing Guidelines and recommends a sentence of 280 months of imprisonment (220 months on Counts 1 and 2, followed by 60 months on Count 3), followed by at least 5 years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to comply with the sentencing factors in 18 U.S.C. § 3553(a).

I.   INTRODUCTION AND FACTUAL BACKGROUND

On March 18, 2024, the defendant pled guilty to Counts 1 to 3 of the information charging Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, Possession with Intent to Distribute Controlled Substances, and Possession of a Firearm in Furtherance of Drug Trafficking Crimes. Dkt. 20 (Information); Dkt. 22 (Plea).

The United States does not have any objections to the facts contained in the disclosure of Presentence Investigation Report ("PSIR"), dated July 23, 2024, prepared by the U.S. Probation Office, which in turn relied upon law enforcement reports and related discovery provided by the United States. Dkt. 32.

In pleading guilty, the defendant admitted that he conspired to sell counterfeit oxycodone

pills containing fentanyl, as well as cocaine and methamphetamine. PSIR ¶ 6. That conspiracy involved Jabree Jones, Anthony Zaremski, and Brandon Bartley. PSIR ¶¶ 12, 21. As part of the investigation, the defendant helped store the supply of drugs at his residence in Half Moon, New York ("Twin Lakes Premises") and also sold fentanyl pills, cocaine, and methamphetamine with and for Jones and Zaremski. PSIR ¶ 6. The DEA conducted multiple controlled purchases, using a confidential source, at an apartment on Western Avenue in Albany, New York ("Western Avenue Premises"), where the defendant and his conspirators were observed on multiple occasions, and where Jabree Jones and other conspirators conducted drug transactions involving a confidential source. PSIR ¶¶ 16-24.

On May 23, 2023, law enforcement executed a search warrant at the Twin Lakes Premises, where law enforcement found the defendant with a female, along with 11,200 grams of counterfeit M-30 stamped pills containing fentanyl in two bedroom closets along with a money counter, as well as five firearms, including a Glock with a high capacity magazine in the defendant's nightstand, a .22 caliber rifle next to the shopping bags containing fentanyl pills, and 12-gauge shotgun with a defaced serial number near the sliding glass door leading to the porch, and a revolver in a safe in the bedroom closet with a large quantity of pills. PSIR ¶ 29. A few photographs from the search of the Twin Lakes Premises are enclosed as Exhibit A.

Also on May 23, 2023, law enforcement executed a search warrant at the Western Avenue Premises, where they found the defendant's co-conspirator, Brandon Bartley, along with safe in the living room containing approximately 403 grams of fentanyl pills, approximately 7,237 grams of pills containing methamphetamine, and approximately 737 grams of cocaine. PSIR ¶ 32. They also found a digital scale and assorted other pills around the Premises. Law enforcement also found 34 firearms in the Western Avenue Premises, including 29 firearms in the safe with the drugs, as

well as other firearms in the living room, in the rear bedroom, and a loaded Glock handgun on Bartley's bed. PSIR ¶¶ 32. One of the firearms, a Glock Model 22 .40 pistol, was equipped with a machinegun conversion device that converted the firearm into a machinegun. *Id.* A few photographs from the search of the Western Avenue Premises, including the drugs and guns found in the safe, are enclosed as Exhibit B.

Finally, on May 23, 2023, law enforcement also executed a search warrant at the residence of Anthony Zaremski, at Foxwood Drive in Clifton Park. PSIR ¶ 33. Upon entry, Zaremski exchanged gunfire with the Saratoga County tactical team, which resulted in members of the team being injured and Zaremski passing away. *Id.* Along with the defendant's 9mm pistol, once the scene was processed, law enforcement found additional drugs and money. *Id.*

In his post-Miranda interview, the defendant described his close relationship with Anthony Zaremski and a pact that he had with Zaremski, telling officers, "I was supposed to go out with him, you know that right. If [the female in the apartment] wasn't with me, I'd be dead too, that's how it's supposed to be" and "I would've gone out with a bang like Zo. I would have shot at you guys until you killed me, suicide by police… 110%.... if it came down to it, me and Zo told each other we were go out with a bang if they ever came…." PSIR ¶ 34.

The defendant has been detained since his arrest on May 23, 2023. PSIR ¶ 10.

## II.    GUIDELINES PROVISIONS

### i.    Criminal History Category

The United States agrees with Probation that Luizzi has a total criminal history score of four, based on three prior convictions, and establishes a criminal history category of III. PSIR ¶ 61.

### ii. Offense Level Computation

As to Counts 1 and 2 related to the defendant's drug trafficking offenses, Probation has properly calculated the total offense level to be 35. PSIR ¶¶ 40-51. The base offense level of 36 is based on the drug quantities involved—namely, that the defendant was personally involved with more than 43,000 kilograms of converted drug weight, which accounts for the significant quantities of fentanyl, methamphetamine, and cocaine possessed. PSIR ¶ 40. Probation has also properly not applied an enhancement for possessing a dangerous weapon because the conduct charged in Count 3 accounts for any weapon enhancement. PSIR ¶ 41.

The sentencing enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance (the "Premises Enhancement"), which results in an additional two-level upward adjustment under U.S.S.G. § 2D1.1(12), is also properly applied because the defendant maintained and had access to two properties—the Twin Lakes Premises and the Western Avenue Premises—where he and his co-conspirators stored, received, and sold drugs, and the Western Avenue Premises had numerous controlled purchases take place there involving the defendant's co-conspirators. PSIR ¶¶ 16-24. The Second Circuit has upheld the application of the Premises Enhancement where the property contained drugs, drug paraphernalia, drug proceeds, and a demonstrated history of prior drug purchases there. *See, e.g.*, *United States v. Sampel*, 860 F. App'x 789, 792 (2d Cir. 2021) (applying enhancement when search resulted in discovery of drug paraphernalia and large amounts of cash, and at least two meetings were conducted at the home related to drug business); *United States v. Robtoy*, 848 F. App'x 53, 54–55 (2d Cir. 2021) (no clear error applying enhancement based on the presence of a co-defendant, a large quantity of drugs, and the history of prior purchases from that location).

The United States agrees with Probation that the defendant is entitled to a two-level downward adjustment of the offense level for acceptance of responsibility pursuant to USSG § 3E1.1(a). PSIR ¶ 48. The United States also hereby moves for an additional one-level downward adjustment pursuant to USSG § 3E1.1(b) to credit the defendant for timely notifying authorities of his intention to enter a plea of guilty. PSIR ¶ 49. After application of all the adjustments noted above, the total offense level for Counts 1 and 2 should be 35. PSIR ¶ 51.

Count 3 requires a mandatory term of 60 months, which runs consecutively to Counts 1 and 2. PSIR ¶ 52.

### b. Guidelines Calculations

*Imprisonment.* As to Counts 1 and 2, based upon a total offense level of 35, and a criminal history category of III, the Guideline imprisonment range is 210 to 262 months. Second, there are no Guideline calculations applicable to Count 3, which requires a 60-month consecutive sentence. U.S.S.G. § 2K2.4. The aggregate Guideline imprisonment range for all counts would therefore be 270 to 322 months.

*Supervised Release.* The Guidelines recommend a term of supervised release of at least 5 years for Counts 1 and 2 and not more than 5 years for Count 3. *See* U.S.S.G. § 5D1.2.

*Fines.* Based upon a total offense level of 35, the Guideline fine range would be $40,000 to $10,000,000. U.S.S.G. §5E1.2(c)(3)-(4).

### III.  GOVERNMENT'S SENTENCING RECOMMENDATION

The United States requests that the Court sentence the defendant according to the Sentencing Guidelines and recommends that the Court sentence the defendant to 280 months of imprisonment (220 months on Counts 1 and 2, followed by 60 months on Count 3); a supervised

release term of 5 years for all counts, to run concurrently; forfeiture of $2,616 found at the Twin Lakes Premises, and a special assessment of $300 for all counts.

Having failed to submit the necessary certified personal financial statement or execute a release for a credit check, the defendant has not demonstrated an inability to pay a fine. PSIR ¶ 85. Assuming the defendant does not remedy these failures and demonstrate an inability to pay a fine, the government requests that the Court also impose a low-end Guideline fine of $40,000.

### A. The Nature, Circumstances, and Seriousness of the Offense

The requested sentence should be imposed to reflect the nature and seriousness of the defendant's drug trafficking crimes involving a multi-person conspiracy to distribute significant quantities of cocaine, methamphetamine, and fentanyl, and his possession of multiple firearms, including a machinegun, at multiple locations.

As detailed in the PSIR, the offense involved the defendant's possession with intent to distribute a significant amount, and multiple types, of controlled substances. PSIR ¶¶ 6, 11-34. The significant penalties for fentanyl, methamphetamine, and cocaine trafficking, such as the 10-year mandatory minimum for possessing with intent to distribute mixtures or substances containing more than 400 grams of fentanyl and more than 500 grams of methamphetamine, and the 5-year mandatory minimum for possessing with intent to distribute 500 grams or more of cocaine, reflects the legislative priority that fentanyl, methamphetamine, and cocaine have taken in drug enforcement efforts in the United States. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A), (b)(1)(B). In fact, of the 18,939 drug trafficking cases reported to the U.S. Sentencing Commission in the Fiscal Year 2023, 16.3% involved fentanyl and 47.5% involved methamphetamine; since 2019, fentanyl offenses have increased by 244.7%, and methamphetamine offenses have increased by 6.6%, which reflects the nationwide epidemic in fentanyl and methamphetamine trafficking

crimes, including overdoses and deaths in recent years.[1] The DEA reported in January 2024 not only that fentanyl "remains the primary driver behind the ongoing epidemic of overdose deaths in the United States" but also that fentanyl is "increasingly being mixed with other illicit drugs, such as methamphetamine, heroin, and cocaine."[2] Those dangers are all the more present here, given that the defendant and his co-conspirators possessed and distributed fentanyl, methamphetamine, *and* cocaine. These crimes are not victimless: drug trafficking and use continues to increase and destroy our communities, both through its threat to public health through addiction, as well as through the violence that is connected to drug trafficking. *See Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring) (noting that the portrayal of a drug trafficking offense as "nonviolent and victimless…is false to the point of absurdity").

The seriousness of the defendant's conduct is also highlighted by his possession of firearms, including the possession of a loaded firearm near his bed and a defaced firearm near the patio, in furtherance of drug trafficking, as well as three firearms spread around his apartment, not to mention the 34 firearms found at the Western Avenue Premises, including one firearm that had a conversion device that allowed it function as a machinegun.[3] PSIR ¶ 32. The "damage a machinegun can inflict is enormous." *United States v. Hixson*, 624 F. Supp. 3d 930, 940 (N.D. Ill. 2022) ("The dangerousness manifests itself not only in the sheer number of bullets that can be emptied from the magazine in the blink of an eye but also in the resulting lack of control of the firearm when discharging it"). Public videos illustrate the comparative dangers of firing a regular

---

1 U.S. Sentencing Comm., *Quick Facts, Fentanyl Trafficking,* https://www.ussc.gov/research/quick-facts/fentanyl-trafficking (last visited Aug. 29, 2024); U.S. Sentencing Comm., *Quick Facts, Methamphetamine Trafficking*, https://www.ussc.gov/research/quick-facts/methamphetamine-trafficking(last visited Aug. 29, 2024).
2 DEA STREET, https://www.dea.gov/sites/default/files/2024-01/Street%20Report%20-%20Jan%202024%20-%20FINAL.pdf (last visited Aug. 26, 2024).
3 Indeed, possession of a machinegun in furtherance of drug trafficking crimes carries a 30-year mandatory minimum sentence that would run consecutively. 18 U.S.C. § 924(c)(1)(B)(ii).

pistol with one equipped with a conversion device that allows it to function as a machinegun. *See, e.g.,* AL.com, *Glock switch demonstration*, YouTube (Dec. 15, 2023), https://youtu.be/e6WENx_42WQ?si=JieMDNbsAPKFbqs5.

The defendant should be sentenced based on his serious offense conduct, which significantly impacted gun violence and drug addiction in our community.

### B. The History and Characteristics of the Defendant

The defendant is not a first-time offender; he has three prior offenses, including convictions for petit larceny and resisting arrest, as well as prior arrests for attempted grand larceny, criminal possession of stolen property, menacing, and multiple other drug crimes. PSIR ¶¶ 58-68. His dangerousness is also highlighted by his statements to officers that, if not for his female companion's presence at the time of the search, he would have shot at officers to "go out with a bang" based on his pact with his friend and co-conspirator, Anthony Zaremski. Thankfully, the defendant did not choose that path, which could have resulted in additional injuries and potentially deaths, but his willingness to choose violence by shooting at officers executing a lawful search underscores the significant harms of this conspiracy and the defendant's vulnerability to be influenced by other bad actors, and his own potential for violence. The defendant's adjustment to incarceration since his arrest has also been poor, given that he attacked and punched a correctional officer at Albany County Jail in July 2023. PSIR ¶¶ 69. His escalating criminal conduct in recent years, culminating in the instant offenses, combined with his poor adjustment to imprisonment, suggests that he poses a significant risk of recidivism and danger to the community once released.

The defendant also has a history of using and abusing marijuana, and multiple other substances, including opiates, cocaine, ecstasy, LSD, and fentanyl. PSIR ¶ 77. He reported starting to experiment with drugs at any early age and by the time of his arrest, was using multiple

substances daily. *Id.* He also has mental and emotional health issues. PSIR ¶ 76. His history of substance abuse and mental health issues could lead to irrational and impulsive decision-making, and contribute to his recidivism risk, and merits special conditions for any term supervision imposed, including the special conditions recommended by Probation. *See* PSIR at 28-29.

### C. Respect for the Law, Just Punishment, and Deterrence

A Guideline term of imprisonment will also promote respect for the law, provide just punishment, and further both specific deterrence to the defendant and general deterrence to others. 18 U.S.C. § 3553(a)(2). The requested sentence will serve as a general deterrent to those who unlawfully possess firearms as well as those who traffic in fentanyl, cocaine, and methamphetamine that are deadly and poison our communities. It will also serve as a specific deterrent to protect the public from the future crimes this defendant could commit.

A Guideline prison sentence also reflects the appropriate sentencing range established by the Sentencing Guidelines and avoids unwarranted sentencing disparities among defendants. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-Guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Those Guidelines have been used and deemed reasonable by other federal courts, including in the Northern District of New York, in sentencing other defendants for similar drug trafficking and firearms offenses. *See, e.g.*, *United States v. Cintron*, 5:23-cr-00213-GTS, ECF No. 45 (Nov.

9

6, 2023) (sentencing defendant within the applicable guideline range for drug trafficking offense involving fentanyl and possession of a firearm); *United States v. Gulley*, 5:21-cr-00269-GTS, ECF No. 44 (Nov. 28, 2023) (sentencing defendant to guideline term of 240 months for drug trafficking offense involving fentanyl and possession of multiple firearms in furtherance of drug trafficking). Likewise, this Court should avoid any sentencing disparities and should sentence the defendant according to the Guidelines here.

## IV. CONCLUSION

Given the nature and characteristics of this offense involving a conspiracy to possess and distribute significant quantities of fentanyl, cocaine, and methamphetamine, stored at two separate locations, and possession of almost 40 firearms, including defaced and stolen firearms, as well as a firearm equipped to function as a machinegun, the United States requests that the Court sentence the defendant according to the Sentencing Guidelines and recommends that the Court impose a sentence that includes a total term of imprisonment of 280 months followed by 5 years of supervised release.

## V. RESERVATION OF RIGHTS

The United States reserves the right to respond to defense arguments raised for the first time after filing this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the Sentencing Guidelines for grounds not identified by the parties or in the PSIR, the government requests notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States also requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, except for the confidential sentencing recommendations submitted by the United States Probation Office.

Dated: September 17, 2024					Respectfully submitted,

					CARLA B. FREEDMAN
					United States Attorney

		By:	*/s/ Alexander P. Wentworth-Ping*
					Alexander P. Wentworth-Ping
					Assistant United States Attorney
					Bar Roll No. 701897